CARPENTER LAW GROUP
Todd . D. Carpenter (CA SBN 234464)
402 West Broadway 29th Floor
San Diego, California  92101
(619)347-3517
Todd@Carpenterlawyers.com

*Attorney for Plaintiff* GINA KILPELA on behalf of
themselves and all others similarly situated

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA KILPELA, an individual, on behalf of themselves and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>INNOVATIVE STYLING OPTIONS, INC., and ZOTOS INTERNATIONAL, INC.,<br><br>            Defendants. | Case No. **'15CV2464 H    JMA**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Trial Date: |

## CLASS ACTION COMPLAINT

Plaintiff Gina Kilpela ("Plaintiff"), by and through her attorney, bring this class action on behalf of herself and similarly-situated others who purchased Maintamer Straightening System hair-care product manufactured and marketed by Innovative Styling Options, Inc., and Zotos International Inc. (collectively, "Defendants"), and states as follows:

## INTRODUCTION AND NATURE OF ACTION

1.      Zotos International Inc. ("Zotos") is a leading professional beauty company that manufactures its beauty products in New York.

2.     Zotos sells its products internationally through online retailers as well as professional beauty stores and salons.

3.     Innovative Styling Options, Inc. ("ISO") is a professional hair product brand owned by Zotos that markets and sells the ISO Maintamer Straightening System (the "Product").

4.     Defendants promote the Product claiming it is: "Damage-Free."

5.     Defendants also market the Product to customers with thicker, uncolored hair as their website claims the Product is "[i]deal for smoothing coarse hair, taming unruly curls and waves, unperming ends and controlling frizzy hair" and was designed for "tinted hair (up to 20 volume) or lightly high-lighted hair (up to 40%)."

6.     Plaintiff, who has thick, coarse and frizzy hair and who never has colored her hair used Defendants' Product and experienced considerable damage to her hair and scalp.  Three days after application Plaintiff's hair began falling out and, two weeks after application, large sections of Plaintiff's scalp were visible where her hair had completely broken.  Plaintiff continued to experience increasing damage to her hair and scalp three weeks after application.

7.     Plaintiff's experience, along with the experiences of numerous other consumers clearly demonstrate that Defendants' product is not safe for use in thick, uncolored hair and that the Product is not "Damage-Free" as represented.

8.     As a result of Defendants' deceptive representations, consumers – including Plaintiff and members of the proposed Class – have purchased products that do not perform as advertised.  Plaintiff and members of the proposed Class also have suffered hair loss and damage to their hair and scalp as a result of Defendants' deceptive representations.

9.     Plaintiff brings this action on behalf of herself and all other similarly situated consumers to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of

consumers, and obtain redress for those who have purchased the Products based on Breaches of Express and Implied Warranties, violations of California Consumer Protection Statutes and the Moss-Magnuson Warranty Act, Negligence/Gross Negligence, Strict Liability and Restitution based on Quasi-Contract. Plaintiff seeks injunctive and monetary relief for all consumers who purchased the Product.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendants.

11.     This Court has jurisdiction because Plaintiff Gina Kilpela is a resident of Pennsylvania, Zotos is incorporated in New York and ISO is headquartered in California and its Marketing and Sales also is located there.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because Defendant conducts a substantial amount of business, including the marketing and distribution of the product in this judicial district.

## PARTIES

13.     Plaintiff Gina Kilpela is 39 years old, Caucasian, of southern Italian descent and resides in Pittsburgh, PA. She has very thick, coarse, frizzy hair and for all of her adult life has worn her hair past her shoulders, both curly and blown out smooth. Plaintiff has never used any coloring product in her hair and for many years has used several straightening products, such as Rusk Anti-Curl, to provide her hair with greater manageability and lessen bulk.

14.     In May 2013, Plaintiff moved to Pittsburgh and once again tried Rusk Anti-Curl to relax her hair. However, it no longer worked as well as it had in the past and Plaintiff thus sought a more effective product.

3

15.     On October 30, 2013, Plaintiff had the Maintamer Straightening System applied to her hair.  A local stylist, Maria Gaygan, owner of Elixir Hair Artistry in Mt. Lebanon, PA, recommended the Product.  Ms. Gaygan assured Plaintiff the Product was not too harsh as the Product explicitly stated that it was "Lye-Free."  At this time, Plaintiff also observed and inspected the Product's packaging and noticed the front label claimed the Product was "Damage-Free."

16.     After inspection, Plaintiff purchased the Product and instructed Ms. Gaygan to apply it to her hair.  Ms. Gaygan applied the Product as directed; she applied the first phase and rinsed and then applied the second phase and rinsed thoroughly and completely.  Throughout application Ms. Gaygan asked time and again if Plaintiff was experiencing tingling or discomfort; she did not.  Finally, Plaintiff's hair was blow dried on low and smoothed with a flat iron.

17.     On November 1, 2013, Plaintiff's scalp felt tight, as if she had been wearing a ponytail and she also felt some mild tingling.  As a result, Plaintiff washed her hair that afternoon and, hardly dried it at all, fearful of possible damage.  By the evening, Plaintiff felt stubble along her hairline and the tightness and tingling remained, subsiding slightly.

18.     On November 2, 2013, Plaintiff, while washing her hair, felt additional stubble and noticed that a substantial amount of hair had begun to fall out.

19.     On November 4, 2013, with the damage worsening, Plaintiff called Ms. Gaygan, and on November 5, 2013, visited the salon so that Ms. Gaygan and her partner could determine if breakage was occurring.  At this point, just under a week after application, stubble could be felt all over the scalp.

20.     Ms. Gaygan observed hair bent at the root but was hopeful that the damage to Plaintiff's hair would soften over time.  On November 6, 2013, Ms. Gaygan called ISO customer service to discuss what she saw and seek a solution.

21.     In an attempt to mitigate her injuries, Plaintiff visited Ms. Gaygan every other day for the next week so that Ms. Gaygan could deep condition and dry

her hair, but Plaintiff's condition failed to improve.  To the contrary, so much hair was lost during the second week that large sections of Plaintiff's scalp were visible.

22.    On November 11, Plaintiff sent ISO customer service an email about her situation and followed up with a phone call on November 13, 2013.  During the call, Plaintiff made clear that she was losing hair by the handful.  Jeanette Toth, a customer service employee, recommended that Plaintiff use Joico Deep Reconstructor Conditioner, Leave-In Protectant and Intense Hydrator[1] (the "Joico Products") and sent an email outlining how Plaintiff should use these products.

23.    On the evening of November 13, Plaintiff visited and consulted with another well-known Pittsburgh stylist.  The stylist observed breakage all over Plaintiff's scalp and thus believed that the breakage would continue for some time.  She also told Plaintiff the hair remaining on her scalp was damaged as it broke unevenly and even short pieces were split.  The stylist recommended Bumble and Bumble curl enhancing products to permit Plaintiff's hair to dry without the use of heat and gave Plaintiff two Keratase products that she thought could strengthen Plaintiff's hair and help it grow.

24.    On November 14, 2013, Ms. Gaygan brought the Joico Products to Plaintiff's home, which Plaintiff used, with no heat, everyday.  This course of action provided no relief.

25.    As of November 20, 2013, three weeks since the Product was first applied, Plaintiff lost more than half of the hair on the crown of her head.  At this time there also were visible spots on both the left and right sides of Plaintiff's head and along her hairline, where there was hair no longer than a quarter of an inch long.  In addition, the right side displayed a visible patch of broken hair.  Plaintiff also suffered from stubble over the entire top of her head.  This stubble was visible due to the fact that little hair remained.

---

[1] Upon information and belief Joico is a beauty brand also owned by Zotos.

26.     Defendant Zotos International Inc. is a New York corporation, headquartered in Connecticut. Upon information and belief, at all relevant times, Zotos has manufactured the Product and advertised, marketed, provided, offered, distributed, and/or sold it through ISO throughout the United States including to individuals in Pennsylvania such as Plaintiff and the Class.

27.     Defendant Innovative Styling Options, Inc. is a Delaware corporation owned by Zotos International Incorporated.  Upon information and belief, ISO is headquartered in California and its Marketing and Sales Office also is located there. At all relevant times, ISO has advertised, marketed, provided, offered, distributed, and/or sold the Product throughout the United States including to individuals in Pennsylvania such as Plaintiff and the Class.

## ALLEGATIONS

### The False and Misleading Marketing Claims

28.     This lawsuit concerns the ISO Maintamer Straightening System hair product marketed and sold by ISO and manufactured by Zotos.

29.     At all relevant times, Defendants have represented that the Product is safe and "Damage-Free" when used in uncolored, coarse, thick and frizzy hair.

30.     In an early advertisement displayed on October 16, 2006, on ISO's website, the Product is advertised as a "damage-free, thio-free, lye-free technology that processes primarily within the cortex of the hair, to minimize damage to the cuticle." *See* http://web.archive.org/web/20141018010336/http://www.isohair.com/newsroom/view.php/2006/10/16/72 (last accessed Oct. 28, 2015).  In this ad Defendants also claim that customers can "achieve the straight, frizz-free, glossy locks [they] have been dreaming about with no damage and in just two steps with the ISO Maintamer Straightening System." *See id.*  Finally, this ad claims the Product is intended for "colored, fine and wavy or super coarse and curly texture." *See id.*

31.     Defendants continue to make similar representations about the Product.

CLASS ACTION COMPLAINT

32.     Defendants' most recent website advertising the Product claims the Product can help create "beautiful, healthy, straight hair" and that it is "Virtually Damage-free," "Frizz-free," and provides for "Unsurpassed smoothness and manageability."  *See* http://www.isohair.com/products/view.php?id=27 (last accessed Sept. 9, 2014).  This site also maintains that the Product is "[i]deal for smoothing coarse hair, taming unruly curls and waves, unperming ends and controlling frizzy hair" and that it is designed for "normal hair, previously permed hair, tinted hair (up to 20 volume) or lightly high-lighted hair (up to 40%)." *See id.*

33.     The Product's packaging, both past and present, also represents that the Product is "Damage-Free" and "Lye-Free."  Interestingly, these are the only representations concerning the Product's performance that can be seen on the front of the Product's label and the front of the label is devoid of a warning concerning the possibility of damage or a disclaimer alerting consumers that the "Damage-Free" characteristics are limited to consumers who have uncolored hair:



CLASS ACTION COMPLAINT

34.     By promoting the Product as "Damage-Free" and "Lye-Free" and for use in uncolored hair, Defendants warranted the Product as a safe, non-toxic hair smoothing/straightening solution for persons with uncolored hair.

35.     An average consumer viewing the Product's label and/or Defendants' online advertising regarding the Product would believe that the Product is "Damage-Free" when used as directed.

36.     An average consumer also would reasonably expect a warning regarding any potential harm to consumers who have uncolored hair, especially because the Food, Drug and Cosmetic Act provides that cosmetics that may be hazardous to consumers must bear appropriate warnings.  *See* 21 C.F.R. § 740.

**Plaintiff's Experience, As Well As Those of Other Consumers, Demonstrate That The Product Is Not "Damage-Free" and Is Not Safe For Use In The Population For Which Defendants Claim The Product Is Intended**

37.     Defendants' claims are false and misleading based on Plaintiff's and countless other consumers' experiences using the Product.

38.     Although Plaintiff never colored her hair and had the Product applied by a professional hair stylist, after application, she experienced severe hair loss and damage to her hair and scalp.  *See* PARTIES *supra*.

39.     Other consumers, who have used the Products and commented about their experience(s), also have experienced damage to the hair and scalp as a result of the Products' application.

40.     Cellia from Vancouver, Canada on Mar. 5, 2014 commented: "My hair was virgin, i used the product for the specified amount of time and my hair is falling out in chunks."  *See* http://www.sleekhair.com/2433.html#reviews

41.     Leslie from Pasadena, CA on Feb. 18, 2014 commented: "My hair is chemically straightened, my hair dresser applied this ISO Maintamer to my hair, 10 days later I colored it with permanent hair color. My hair is falling out by the handfuls."  *See Id.*

42.     Toi from St. Louis, MO on Jan. 7, 2014 commented: "I attend a cosmetology school n on student service day I had to use an ISO straightener on my hair and the day I got it my hair was so beautiful that my mom went and got it done on her hair. The next day and I mean the very next day after I comb down my wrap I had piles of hair on my floor and sink. The back of my hair was completely broke off and i can't touch it without it breaking off. I went to school and my instructor, who did the treatment, had no idea what went wrong. She was at a lost when she seen my hair. I tried to contact ISO to see if they can tell me what's going on n I haven't got an response back yet. My mother called me and was screaming and yelling that her hair was falling out in humps and I know that her treatment was done correctly because our campus manager did it because it was the first time someone came in and ask for one. Can anyone help us. My hair was down to he middle of my back and now it barely touch my shoulders and my mom hair is now up to her ears because of the treatment." *See Id.*

43.     Dawne C from San Diego on Sept. 10, 2012 commented: "I'd had the Iso Manetamer done to my hair professionally several times with great results. I was able to grow my hair to a length of over 30" to donate to Locks of Love. Last year, after cutting my hair to my shoulders, I had the same professional do my Iso straightening and it FRIED my hair, mostly in the back ... this was strange, no other chemicals were in my hair other than permanent hair color I've used for several years. I had to grow out my hair for a year to cut off all the damage. Yesterday, I decided to give Manetamer another try and applied it at home, following all the directions EXACTLY and used a timer. I even rinsed my hair standing in the shower to insure all chemicals were fully rinsed. RESULTS ARE DISATEROUS! I now have VERY frizzy/puffy hair that is far worse than when I started with relatively straight hair with some random coarseness to it. My hair just tears apart and won't dry since all the hair bonds have been destroyed. I will be cutting my shoulder length hair into a Pixie tomorrow night ..." *See Id.*

44.     Never Again from Charlotte NC on Nov. 11, 2011 commented: "Front hair line is thinner and my back looks as if it was purposely tapered! :(." *See* http://myaccount.sleekhair.com/mod_productReviews/displayProductReviews.php?productId=2433.

45.     Christine from Flint, MI commented on Jan. 23, 2011: "I had this applied by a trained ISO Tech/Rep and immediately had scalp sensitivity and also some hair breakage in the front of my head at my appointment. The tech had no explanations as to why it happened. Well a few days later my hair started to fall out like crazy! It has been over a month and my hair is still falling out. My hair was very thick before I had this done but now my hair volume is less than half of what it was. It will take about 2 years for my hair to grow back to the length it was. I have spent a fortune on Doctor appointments and products to try to stop the hair loss and repair the damage. I am still experiencing scalp sensativity as well and my Doctor can't guarantee that I won't lose all my hair." *See Id.*

46.     Donna Marie from New York, NY on Jan. 10, 2011 commented:  "If you are not a professional I URGE YOU NOT TO USE THIS PRODUCT. Write to me and thank me. My hair is flatironed, I go to Chinatown every 8 months. A friend had a PROFESSIONAL use this on their hair, it worked fine. My hair was like SILK. After one treatment, I was in tears in the shower. My hair is fried." *See Id.*

47.     SV from St Petersburg, FL on Nov. 9, 2010 commented: "I had a straightening treatment on my hair that was very expenisve. My hair dresser recommended that I use main tamer for my roots for just the growth. Three months after the first treatment (not main tamer) I had this done. It worked fine. Three months later, I had the process done again. Within a week I noticed a large amount of hair falling out. Five months later, its stil falling out! It's mostly on the top of my head but it is so embarassing becasue that section is about one inch long and I have a few comb over pieces to try and cover it but those keep falling out also. I heard they were taking it off the market. I've read other reviews with the same result. If

you want your hair, you won't use it. I'd rather have curly hair than no hair at all!"
*See Id.*

48.    Cynthia from Puerto Rico on Oct. 6, 2010 commented: "I have been using this product for 5 years, I have coarse frizzy hair. The only problem with this product is that your hair breaks...on the sides, back and front. It is always in these places that it breaks. The last time I used it was 8 months ago, and it was a nightmare..I lost a chunk of hair on the front hairline. I always go to a professional stylist to do this. Reading the reviews this is a comon problem."  *See Id.*

49.    Stacy from Philadelphia on Oct. 5, 2010 commented: "I used the Maintaimer on Sunday night on myself. I am a licensed cosmetologists. I washed my hair no conditioner towel dried and then used step 1 fir 15 min's I then rinsed my hair for 10 min's, I towel dried again and then used step 2 for 5 minutes. after i rinsed my hair i noticed it was very dry and hard to comb. i decided to let it dry naturally. when it dried it was a brillo pad. imagine when you were a kid and your mom gave you a bad perm and it fried. thats how my hair was. Oh forgot to mention I color with 10 and 20 % peroxide on my hair. I washed my hair tuesday morning and in no way shape or form is my hair soft. i cant wait until it grows out. I am wondering if anyone had the same problem."  *See Id.*

50.    Alana from Miami, FL on Aug. 6, 2010 commented: "I have really long curly/thick hair. I'm mixed with Black and East Indian. Using this product was the first time I ever used a chemical in my hair (age 22) so I was very nervous. My goal was to just loosen my curls to make my hair more manageable. The results were not as expected. My curls did loosen, however OVER A QUARTER OF MY HAIR FELL OUT. ALL MY EDGES AT THE FRONT AND BACK FELL OUT, AND SMALL CHUNKS IN THE MIDDLE. At the beginning everything seemed fine, but after a month or so when I combed my hair or even touched it, hair just fell out. It was if I was shedding (so much I had to vacuum/sweep every day). The next worst part was when it started growing back. I had to hide the awkward short hairs

that stood out especially along my front edges with headbands, hair clips, and tons of gel. I had to keep my hair in pony tails or clip it to cover up certain areas. Its been two years, and I just decided to grow my hair out and cut the "relaxed" hair every few months to promote hair growth. I still have six more inches to go. This product may have worked for some people, but you never know how your hair will react if you've never used a chemical in it before. I researched this product and it came highly recommended from professional hair stylists, but it just didn't react well with my hair texture. Honestly, if I could go back...it wasn't worth me messing up/losing my hair. Thank God I had a lot of hair in the first place, or I would have been even more devastated." *See Id.*

51.    Liz from Los Angeles, CA on Sept. 16, 2009 commented: "I had this done professionally at a salon. What a big mistake, my hair was ruined! I had to cut it off. My hair looked terrible and as it grew, it looked even worse. It broke off all over my head. What a complete disaster!" *See Id.*

52.    Rite19 commented: "This product damaged my hair the last time I used it and I also had some breakage. It has been 2 months since applying it to my hair and I am still having problems with dry hair and damage. Now I can only let it grow out and wait. Thankfully, only part of my hair was damaged. I do not recommend!" *See* http://www.makeupalley.com/product/showreview.asp/ItemId=140464/Main-Tamer/ISO/Treatments.

53.    As such, Defendants' representations about the safety and "Damage-Free" characteristics of the Product in persons who have uncolored hair are contradicted by numerous consumer accounts detailing damage and hair loss following proper application of the Product.

**Zotos And ISO Have Harmed Consumers Through Their Marketing and Sale Of The Product**

54.    Undeterred by the myriad of complaints and experiences demonstrating the damaging potential of the Product in users with uncolored, thick, coarse and

frizzy hair Defendants have and continue to represent that the Product is safe and "Damage-Free."

55.   As the manufacturer and/or distributor of the Product, Defendants possess specialized knowledge regarding the safety of the ingredients contained in its Product and, moreover, is in a superior position to, and has, learned of the lack of safety for the ingredients in the Product.

56.   Defendants also were alerted to the Product's damaging quality when Plaintiff and other consumers called and/or emailed Defendants' offices and alerted them to the damage and hair loss they experienced attendant to application of Defendants' Product.  As a result, Defendants knew, but failed to disclose, that the Product is capable of damaging the hair and scalp of customers who have uncolored, thick, coarse and frizzy hair.

57.   As a result, Defendants knew 1) their Product posed a substantial risk of damage and hair loss to consumers, 2) their consumers were unaware of this risk and 3) their consumers had a reasonable expectation that Defendants would disclose the risk so that consumers could make an informed choice about the purchase and use of the Product.

58.   Despite this knowledge, Defendants failed to disclose the risks associated with its Product.  To this day the Product is available for sale, without a disclaimer or warning, on the Internet and in numerous salons.

59.   Plaintiff and Class members have been misled by Defendants' deceptive representations and as a result have incurred hair loss as well as damage to their hair and scalp.  Plaintiff purchased and used the Product during the Class period and in doing so, read and considered the advertising and marketing by Defendants and based their decisions to purchase and use the Product on the representations on the packaging and on Defendants' website.  Defendants' representations and omissions were a material factor in influencing Plaintiff's decision to purchase and use the Product.

60.     Plaintiff and the Class would not have purchased the Products had they known it would damage their hair and scalp and cause hair loss.

61.     As a result, Plaintiff and the Class members have been injured in fact in their purchases of the Supplements in that they were deceived into purchasing a Product that did not perform as advertised.

62.     Plaintiff and the Class members also have been injured in fact in their use of the Product in that they have experienced damage to their hair and scalp and have suffered substantial hair loss.  In suffering these personal injuries, Plaintiff and the Class members have been forced to expel time and money in order to mitigate and repair the damage to their hair and scalp caused by Defendants' Product.

63.     Defendants, by contrast, reaped enormous profit from its false marketing and sale of the Product.

## CLASS DEFINITION AND ALLEGATIONS

64.     Plaintiff brings this action on behalf of themselves and all other similarly situated persons pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All consumers who, within the applicable statute of limitations period, purchased the Product, used the Product as directed and experienced hair loss, damage to their hair and/or scalp, or any combination thereof.

> Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased the Product for resale.

65.     The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Product who have been damaged by Defendants' conduct and their Product as alleged herein. The precise number of Class members is unknown to Plaintiff.

66.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These

common legal and factual questions include, but are not limited to, the following:

(1) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(2) whether Defendants' alleged conduct violates public policy;

(3) whether the alleged conduct constitutes violations of the laws asserted;

(4) whether Defendants engaged in false or misleading advertising;

(5) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(6) whether Plaintiff and Class members have sustained personal injury by means of damage to their hair and scalp and hair loss as a result of using Defendants' Product; and

(7) whether Plaintiffs and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

67. Plaintiff's claims are typical of the claims of the members of the Class because, inter alia, all Class members were injured through the uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

68. Plaintiff will fairly and adequately protect the interests of the members of the Class, have retained counsel experienced in complex consumer class action litigation, and intend to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

69. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts and would also increase the delay and expense to all

parties and the courts.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

70.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, preventing Defendants from further engaging in the acts described and requiring Defendants to provide full restitution to Plaintiff and Class members.

71.     Unless a Class is certified, Defendants will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived and injured.

72.     Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty)

73.     Plaintiff incorporates by reference and reasserts all previous paragraphs.

74.     Defendants explicitly warranted on the Product's Label and Packaging that the Product was "Damage-Free."  Defendants also warranted through its marketing and advertising that the Product was "Damage-Free" when used by persons with uncolored hair.

75.     Plaintiff and the Class members bought the Product in reliance on these warranties and as a result, Defendants' warranties became the basis of the bargain between the Class and Defendants and are part of the standardized contract formed between the Class and Defendants upon purchase of the Product.

76.     The Product failed to perform as warranted because it failed to avoid causing damage to Plaintiff's and the Class member's hair and scalp, and, in fact caused, substantial hair loss.  As a result, the Product failed to conform to Defendants' affirmations and representations as described above and Defendants' thus breached their express warranties regarding the Product.

77.     Plaintiff and the Class took reasonable steps to notify Defendants of the alleged breach by calling and emailing ISO's customer service department and describing the damage and injury the Product was causing.

78.     Plaintiff and the Class were harmed because they would not have purchased the Product had they known about its damaging nature.  In addition, Plaintiff and the Class were harmed when they experienced hair loss and damage to their hair and scalp after using the Product.

79.     Defendants' breach was a substantial factor in causing Plaintiff's and the Class members' harm because they would not have purchased or used a Product which had a risk of causing hair damage and loss.

80.     As a result of Defendants' breach, Plaintiff and the Class have suffered damages in the amount of the purchase price of the Product and its professional application and any consequential damages resulting from purchase and application, including the cost to repair their hair and scalp.

## **SECOND CAUSE OF ACTION**
### **(Breach of Implied Warranty of Merchantability)**

81.     Plaintiff incorporates by reference and reasserts all previous paragraphs.

82.     At all relevant times, there was a duty imposed by law on Defendants requiring them to conform the Products to the representations made on the Product's label and packaging and made in the Product's advertising and ensure that the Product was fit for the ordinary purposes commonly associate with hair smoothing products.

83.    The Product was not merchantable upon delivery and purchase because it caused hair loss and damage to hair and scalp.  As a result, the Product failed to conform to the "Damage-Free" representation found on its label and in Defendants' marketing.  In addition, the Product was not fit for the ordinary purposes associated with hair smoothing/straightening products because, contrary to smoothing/straightening hair, it damaged hair and caused it to fall out.

84.    Defendants were notified that the Product was not merchantable within a reasonable time after the defect manifested itself to Plaintiff and the Class members.

85.    As a result of the Product's non-merchantability, Plaintiff and the Class members have sustained damages in the purchase price of the Product, their loss of hair and damage to their hair and scalp.

## THIRD CAUSE OF ACTION

### (Violation of California False Advertising Law – Cal. Bus. & Prof. Code § 17500, et. seq.)

86.    Plaintiff incorporates by reference and reasserts all previous paragraphs.

87.    Defendants engaged in unlawful conduct under California Business & Professions Code § 17500, et seq., by marketing its Product in a manner suggesting that it was "Damage-Free" when used in persons with uncolored hair, when, in fact, the Product was far from "Damage-Free" as it caused hair loss and damage the hair of Plaintiff and the Class members.

88.    Plaintiff and the Class reasonably relied on Defendants' representations in purchasing the Product.  Thus, as a direct proximate result of Defendants' misrepresentations, Plaintiff and the Class purchased and used the Product.  Plaintiff and the Class were harmed in this regard because 1) they purchased a Product they otherwise would have refrained from buying and 2) the otherwise purchased Product caused hair damage and loss, forcing Plaintiff and the Class to expel time and

1  money to remedy the damage to their hair and scalp.

2       89.    Plaintiff is informed and believes, and on that basis alleges, that as a

3  further direct and proximate result of the marketing described above, Defendants

4  have received from members of the general public, including the Class, money

5  Defendants obtained through its violation of § 17500, which Defendants continue to

6  hold for its sole benefit.

7       90.    Accordingly, Plaintiff, on behalf of themselves and all others similarly

8  situated, seek equitable relief in the form of an order requiring Defendants to refund

9  to Plaintiff and the Class members all monies they paid for the Product, an order

10  requiring Defendants to pay Plaintiff for the consequential damages associated with

11  the Product's use and, in addition, an order requiring Defendants to inform the

12  consuming public that the Product is not "Damage-Free" and that it can cause

13  damage to hair and substantial hair loss in persons with uncolored hair.

14  **FOURTH CAUSE OF ACTION**

15  **(Violation of California Unfair Competition Law – Cal. Bus. & Prof. Code §**

16  **17200, et seq.)**

17       91.    Plaintiff incorporates by reference and reasserts all previous

18  paragraphs.

19       92.    Defendants engaged in unlawful conduct under California Business &

20  Professions Code § 17200, et seq., by marketing the Product in a manner suggesting

21  that the Product was "Damage-Free" and intended for use in persons with uncolored

22  hair, when, in fact, the Product was far from "Damage Free" when used in persons

23  with uncolored hair.

24       93.    Defendants' conduct is unlawful in that it violates the False Advertising

25  Law, California Business & Professions Code § 17500, et seq.

26       94.    Defendants' conduct is unfair in that it offends established public

27  policy or is immoral, unethical, oppressive, unscrupulous, unconscionable or

28  substantially injurious to Plaintiff and the Class members.  The harm to Plaintiff and

the Class members arising from Defendants' conduct outweighs any legitimate

benefit Defendants have derived from the conduct.

95.   Defendants' misrepresentations and omissions are likely to mislead a

reasonable consumer.

96.   Plaintiff relied on Defendants' misrepresentations and omissions

97.   As a direct proximate result of Defendants' violations, Plaintiff would

have otherwise purchased or used the Product and, therefore suffered injury in fact

through lost money attendant to purchase of the Product and lost money and time

attendant to the damage caused by the Product's use.

98.   Plaintiff, on behalf of herself and the Class members, seeks restitution

of monies they paid for the Product.  Plaintiff also seeks relief on behalf of herself

and the Class members for time and money expended in efforts to remedy the

damage inflicted by use of Defendants' Product.  Finally, Plaintiff seeks equitable

and injunctive relief on behalf of herself and the Class members pursuant to

California Business & Professions Code § 17203.

## FIFTH CAUSE OF ACTION

### (Magnuson-Moss Warranty Act – 15 U.S.C. § 2301, et seq.)

99.   Plaintiff incorporates by reference and reasserts all previous

paragraphs.

100.   Plaintiff and the Class are consumers as defined in 15 U.S.C. §

2301(3).

101.   Defendants are suppliers and warrantors as defined in 15 U.S.C. §

2301(4), (5).

102.   The Product is a consumer product as defined in 15 U.S.C. § 2301(6).

103.   Defendants warranted to Plaintiffs and Class members that the Product

was of merchantable quality and fir for the ordinary purposes for which it was

intended to be used.

104.   Defendants' warranties that its Product is "Damage-Free" is a promise

that the Product will meet a specified level of performance; the Product will straighten hair without causing damage.  The "Damage-Free" affirmation is more than a product description because the affirmation concerns how the Product will operate when it is applied, rather than its composition.

105.   Defendants' breached their express warranties because their statements about the Product were false and the Product does not conform to Defendants' affirmations and promises described above.

106.   By reason of Defendants' breach of its express and implied warranties set forth above, Defendants have violated the statutory rights due to Plaintiff and the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., thereby damaging Plaintiff and the Class.

107.   As a result of Defendants' breach, Plaintiffs and the Class have sustained damages and other losses in an amount to be determine at trial. Plaintiff and the Class are entitled to recover damages, costs, attorneys' fees, rescission and other relief as is deemed appropriate.

## SIXTH CAUSE OF ACTION

### (Negligence and/or Gross Negligence

108.   Plaintiff incorporates by reference and reasserts all previous paragraphs.

109.   Defendants owed Plaintiff a duty to use due care in their development, testing, planning, design, marketing, sale and recall of the Product offered for use by consumers.

110.   Through their failure to exercise due care, Defendants breached this duty by producing, processing, manufacturing, distributing and/or offering for sale a Product in a defective condition that was unsafe for its intended use.

111.   Additionally, Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate research or testing, proper manufacturing, production or processing, and failing to take sufficient measures to

1    prevent the Product from being offered for sale in an unsafe and hazardous form.

2        112.   Defendants further breached their duty of care by failing to properly

3    and adequately inform consumers once safety concerning, including hair loss and

4    damage, were brought to Defendants' attention, by making affirmative

5    representations about the Product without reasonable grounds for believing the

6    representations were complete and accurate, by omitting material information from

7    consumers, and Defendants further breached their duty of care by failing to fully and

8    appropriately recall the Product.

9        113.   Defendants knew, or in the exercise of reasonable care should have

10    known, that the Product presented an unacceptable risk to consumers, and would

11    result in damages that were foreseeable and reasonably avoidable.

12        114.   As a direct and proximate result of Defendants' above-referenced

13    negligence and/or gross negligence, Plaintiff and the Class have suffered and are

14    entitled to recover damages, both compensatory and punitive.

15    **SEVENTH CAUSE OF ACTION**

16    **(Strict Liability)**

17        115.   Plaintiff incorporates by reference and reasserts all previous

18    paragraphs.

19        116.   Defendants are producers, manufacturers, marketers and/or distributors

20    of the Product.

21        117.   Defendants produced, manufactured, designed, marketed and/or

22    distributed the Product that was defective in design or formulation in that, when the

23    Product left the hands of Defendants, the foreseeable risk of harm exceeded the

24    benefits associated with the design or formulation.

25        118.   Defendants' Product was expected to, and did, reach Plaintiff without

26    substantial change in condition.

27        119.   Alternatively, the Product, manufactured, designed, marketed and/or

28    supplied by Defendants was defective in design or formulation in that, when it left

1  the hands of Defendants, it was unreasonably dangerous, more dangerous than an
2  ordinary consumer would expect without concomitant accurate information and
3  warnings accompanying the Product.

4      120.   Defendants researched, produced, manufactured, designed, marketed
5  and/or distributed the Product that was defective due to inadequate warning, testing,
6  study and/or reporting regarding the results of such efforts.

7      121.   Defendants produced, manufactured, designed, marketed and/or
8  distributed the Product that was defective due to inadequate post-market warning or
9  instruction because, after Defendants knew or should have known of the risk of
10 injury from the recalled Product, Defendants failed to immediately provide adequate
11 warnings to Plaintiff and the public.

12     122.   As the direct and legal result of the defective condition of the Product
13 as produced, manufactured, designed, marketed and/or distributed by Defendants,
14 and of the negligence, carelessness, other wrongdoing and actions of Defendants
15 described herein, Plaintiff and the Class suffered damages.

16                    **EIGHTH CAUSE OF ACTION**
17              **(Restitution Based on Quasi-Contract)**

18     123.   Plaintiff incorporates by reference and reasserts all previous
19 paragraphs.

20     124.   At all relevant times Defendants represented that the Product was
21 "Damage-Free" when used in persons with uncolored hair.

22     125.   Defendants enticed Plaintiff and members of the Class to purchase the
23 Product through its false and misleading packaging, labeling and marketing.

24     126.   Defendants took money and/or property of Plaintiff and members of the
25 Class paid by Plaintiff and the Class for what they believed was a "Damage-Free"
26 hair-straightening product.  Defendants took their money despite the fact that it
27 knew the Product was anything but "Damage-Free."

28     127.   Defendants have been unjustly enriched as a result of its unjust and

1   unlawful conduct, thereby creating a quasi-contractual obligation on part of

2   Defendants to restore its ill-gotten gains to Plaintiff and the Class.

3       128.  Plaintiff and the members of the Class are therefore entitled to

4   restitution or disgorgement of profits in an amount to be proven at trial.

5

6   **PRAYER FOR RELIEF**

7       Wherefore, Plaintiff prays for a judgment:

8       1.    Certifying the Class as requested herein;

9       2.    Awarding Plaintiff and the proposed Class members damages;

10       3.    Awarding restitution and disgorgement of Defendants' revenues to

11   Plaintiff and the proposed Class members;

12       4.    Awarding consequential damages for time and money spent by Plaintiff

13   and the members of the Class to mitigate and remedy the damage to their hair and

14   scalp caused by application of Defendants' Product.

15       5.    Awarding injunctive relief as permitted by law or equity, including

16   enjoining;

17           a.    Defendants' from continuing the unlawful practices as set forth

18   herein, and directing Defendants' to identify, with Court supervision, victims

19   of its conduct and pay them all money it is required to pay;

20           b.    Ordering Defendants' to engage in a corrective advertising

21   campaign;

22       6.    Awarding statutory and punitive damages, as appropriate;

23       7.    Awarding attorneys' fees and costs; and

24       8.    Providing such further relief as may be just and proper.

25   DATED:  October 30, 2015.        Respectfully submitted,

26           By: TODD D. CARPENTER

27

28           By:____/s/_____

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CARPENTER LAW GROUP**
*Attorneys for Plaintiff* GINA KILPELA, on
behalf of herself and all others similarly
situated.

1

## __DEMAND FOR JURY TRIAL__

2

Plaintiff hereby demands a trial of their claims by jury to the extent

3

authorized by law.

4

DATED:  October 30,  2015.          Respectfully submitted,

5

6

7

8                                   By:_____/s/_____

9                                   *TODD D. CARPENTER*

10

11

12                                  *Attorneys for Plaintiff* GINA KILPELA, on
                                    behalf of herself and all others similarly
13                                  situated.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT